G. A. DAVIDSON v. J. A. POWELL et al.

*Indorsement of Note—Surety—Burden of Proof.*

1. Where the payee (whether original or by a previous indorsement) of a note assigns or transfers it by indorsement he becomes simply an indorser and, by section 50 of *The Code,* liable as a surety unless by the terms of the assignment he limits his liability; if he intends to transfer the title only he should use the words "without recourse" or other phrase of similar import.

2. An indorsement, "I assign over the within note to P.," does not limit the indorser's liability as such.

3. While, if the note be in the hands of the original payee, an indorsement may be shown to have been upon certain conditions, yet a *bona fide* holder for value, before maturity and without notice, is not affected by any equities existing between the original parties, and the same rule applies between the last payee and all subsequent indorsers.

4. The burden of proof is upon an indorser to show any agreement by which his liability was restricted.

CIVIL ACTION, heard before *Armfield, J.,* and a jury, at Special Term, 1894, of RUTHERFORD Superior Court.

The action was commenced in a Justice's Court for the recovery of the sum of $138.90, claimed by plaintiff against defendants as indorsers on two several promissory notes under seal. Said notes were executed by J. W. Davis to John A. Powell, and on the back of each are the following words, to-wit:

" I assign over the within note to S. M. Powell. May 18, 1892.     (Signed)    JOHN A. POWELL."

" For value received I assign over the within note to G. A. Davidson, this December 6, 1892.

                "(Signed)     S. M. POWELL." .

The Justice of the Peace rendered judgment against the defendants, from which they appealed.

The returns of the Justice to the notice of appeal show the following pleadings or answer made by defendants in his Court:

" The defendants deny the right of plaintiff to recovery, on the grounds that they are not liable on said notes as principals, sureties or indorsers; that the transfer of said notes to plaintiff was with the understanding that they were not to become liable for the same.

" For a further defence the defendants allege that the mortgage deed securing said notes did not authorize the sale of said lands therein described, as the same was made, and that the property embraced in said mortgage deed was more than sufficient to pay the notes, and would have done so if sold under a decree of foreclosure."

On the trial in the Superior Court the plaintiff introduced the notes and rested his case—the assignment being admitted by defendants. On motion of plaintiff, "the further defence," relating to mortgage deed made by Davis to secure said notes, and the alleged irregularity of sale, was stricken out as being " too vague and indefinite."

Defendants excepted.

Defendants then asked the Court to instruct the jury that the language of the transfer only passed the title and property in the notes to plaintiff, and he could not recover. Request refused and defendants excepted.

Defendants then asked the Court to instruct the jury that the burden was upon plaintiff to show to the satisfaction of the jury that the defendants agreed and contracted not only to pass the title and property in the notes, but to make themselves liable as indorsers. The Court refused to give the instructions, but stated that the burden was upon defendants to show that the contract and understanding between the parties at the time was that defendants were not to become liable as indorsers.

One of the notes was past due at the time John A. Powell transferred to S. M. Powell. Both notes were past due when S. M. Powell transferred to plaintiff.

Defendant S. M. Powell was introduced as a witness and said that when John Powell sold him the notes he did not transfer them, but witness, after that time, asked John to assign them so he, witness, could trade them. When John assigned the notes he told witness he must not go back on him. Witness said nothing.

The witness further testified that he sold the notes to plaintiff for land, and told him he would give him $5.25 per acre for the land if he would take the notes. He wanted witness to shave the notes, but witness would not. Plaintiff had a deed to land drawn and witness turned over the notes; did not indorse them for a month afterwards. The witness said B. McMahan asked him to transfer the notes, or plaintiff could not sell the land under the mortgage or collect the notes from Davis. Witness assigned them to enable plaintiff to collect from Davis. Nothing said at the time of transfer about witness becoming liable on the notes by his indorsement.

J. W. Davis testified that he made the notes to John A. Powell; that plaintiff came to see him and said he wanted to buy a horse.

The plaintiff then testified that S. M. Powell told him he
37

DAVIDSON *v.* POWELL.

would assign over the notes, and it was forgotten at time of trade; Powell took the notes to McMahan's and assigned them.

B. McMahan, for plaintiff, testified that he wrote the indorsement on the notes, but did not tell Powell plaintiff could not collect without indorsement, but said to Powell that it was usual to transfer, or the usual form.

The following issue was submitted to the jury and answered, Yes:

" Was it the understanding of the parties at and before the trade that the notes would be indorsed by S. M. Powell to plaintiff?"

Judgment for plaintiff.   Defendants appealed.

*Messrs. McBrayer & Durham,* for defendants (appellants). No counsel *contra.*

MACRAE, J.: The indorsement of a note, as generally understood, is its transfer or assignment by writing upon its back, although a negotiable note may be transferred without indorsement.   If indorsed it may be, and generally is, in blank, it having long been the practice for the counsel to fill up the bank on the trial, if an action is brought upon it.   The blank may be filled by the holder in any way which will not enlarge the liability of the indorser. The usual words by which the indorser may limit his liability are "without recourse"; and by these or similar words it is at once understood that the indorser is not to be held liable unless it turns out that the note is not a valid obligation of those whose names are upon it.

The exact and legal meaning of the word "indorsement," as applied to notes and bills, is "the transfer of a negotiable note or bill by the indorsement of some person who has the right to indorse.   Nor can there be an indorsement, in this

sense of the word, except by the payee of the bill; but he may be the original payee, or he may have become, by previous indorsement, a second or subsequent payee." 2 Pars. Bills & N., 1. To assign is to transfer to another. Abbott's Law Dictionary. A bill or note may be assigned by delivery, and without indorsement, in which case his liability is somewhat different from that of an indorser. 1 Daniel Neg. Inst., section 730. When assigned or transferred by indorsement he becomes simply an indorser unless, by the terms of the assignment, his liability is limited. When, as in this case, he uses the words, "I assign over the within note to S. M. Powell," and S. M. Powell indorses, "For value received I assign over the within note to G. A. Davidson," there is no restriction upon their liability.

The effect of indorsements, where expressions like those used in our case are employed by the indorser, is discussed in 1 Daniel, *supra* (section 688c), where he states his conclusion thus: "It is from the fact that a payee assigns a bill or negotiable note by indorsement of his name on the back of it that the law implies his liability as an indorser. His relation to the instrument creates the implication, and the circumstance that he sets forth that relation in express terms does not change it, for the maxim applies, ' *Expressio eorum quae tacite insunt nihil operatur.*' Did the payee intend merely to pass the title he should use the words 'without recourse,' or some phrase of equal import."

By section 50 of *The Code*, "Whenever any bill or negotiable bond or promissory note shall be indorsed, such indorsement, unless it be otherwise plainly expressed therein, shall render the indorser liable as surety to any holder of such bill, bond or promissory note." In the hands of the original payee an indorsement may be shown to be upon certain conditions; but a *bona fide* holder for value before maturity and without notice is not affected by any equities

existing between the original parties. The same rule will apply between the last payee and all subsequent indorsers.

It appears that the note in question was assigned by indorsement of the original payee to S. M. Powell before maturity and by him to plaintiff after maturity. His Honor, therefore, presented an issue to the jury, "Was it the understanding of the parties at and before the trade that the notes would be indorsed by S. M. Powell to plaintiff?" which was answered in the affirmative.

It follows from what we have said that there was no error in the refusal of his Honor to give the instructions asked by defendants. The effect of the indorsements was to make the indorsers liable under the statute; and if there was a different agreement between the parties by which the plaintiff was bound the burden was upon the defendants to show it.

We concur in the view taken by his Honor that the "further defence" was too vague and indefinite to be considered. There is no error.                    Affirmed.